

*U.S. Department of Justice*

*United States Attorney*
*Eastern District of New York*

EAG:TF
F.#2010R00517

*271 Cadman Plaza East*
*Brooklyn, New York  11201*

May 22, 2012

**By ECF**

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:  United States v. Khemchan Sewnarine
           Criminal Docket No. 10-307 (BMC)

Dear Judge Cogan:

      On September 27, 2011, the defendant pled guilty to Count One of the above-captioned indictment, charging him with making a false statement in a passport application, in violation of 18 U.S.C. § 1542.  The defendant is scheduled to be sentenced on May 29, 2012.  The government hereby submits this response to the defendant's letter ("Ltr."), dated May 15, 2012, objecting to the Pre-Sentence Investigation Report ("PSR") dated April 19, 2012, and seeking a sentence that does not take account of the defendant's obstruction of justice.  For the reasons set forth below, this Court should take account of the defendant's obstruction of justice, and sentence the defendant within the applicable advisory United States Sentencing Guidelines ("U.S.S.G" or the "Guidelines") as determined by the Probation Department and this Court.

I.      Background

      On May 6, 2009, the defendant applied for a United States passport at a United States Post Office ("USPO"), attaching a photograph of someone other than himself to the passport application.  But under penalty of perjury, by his signature on the application, the defendant declared that it was a genuine and current photograph of him.

      Apparently upon learning that the processing of his application was delayed, the defendant sent a letter to the Department of State on May 13, 2009, falsely claiming that he had gone to the USPO with an envelope containing passport pictures of both him and a friend, that he had handed the envelope to a clerk

at the USPO, that the clerk - not the defendant - had mistakenly attached the friend's photograph to the defendant's application, and that the defendant only noticed this once he got home. The defendant later returned to the clerk to apply for a new passport, and told her a different story; he told her CVS - not the clerk, and not the defendant - had mixed up his passport photographs with those of a friend.

A Diplomatic Security Service ("DSS") investigation commenced. On June 10, 2009, the defendant contacted Agent Brian Gundersen of the DSS. (The PSR incorrectly states that the agent contacted Sewnarine that day. See PSR ¶ 4.) The defendant said the person in the photograph on his passport application was a friend named "Kevin" and gave Agent Gundersen a telephone number for "Kevin." The defendant said he and "Kevin" did not speak often, but telephone records for "Kevin's" number showed that, in the preceding six months, the defendant and "Kevin" were in very frequent contact. Agent Gundersen called and spoke to "Kevin." During their conversation, "Kevin" said his last name was "Rampersaud" and that he was in Orlando, Florida, and thus unavailable for a physical interview. Six days later, Agent Gundersen attempted to call "Kevin" again, but the phone number was disconnected. According to various database checks, no person named "Kevin Rampersaud" exists.

Throughout the summer of 2009, Agent Gundersen and the defendant were in regular contact. The defendant maintained that he wanted to help the government clear up the mix-up in his passport application. On August 13, 2009, DSS agents visited the defendant's home and spoke with the defendant's mother, asking her if she recognized the person in the photograph attached to the defendant's passport application. Immediately thereafter, on the same day, the defendant called Agent Gundersen. He said, in sum and substance, that he wanted to cooperate with the government in finding the person in the passport photograph, and that he did not know "Kevin Rampersaud's" current whereabouts but was diligently trying to obtain current contact information for him.

Later on August 13, 2009, the defendant called Agent Gundersen again. This time, he said he had managed to reach "Kevin Rampersaud" and that "Kevin Rampersaud" had agreed to transmit a copy of his driver's license to the defendant, who, they agreed, would then pass it on to the government. Agent Gundersen gave the defendant his email address in anticipation of receiving the license.

On August 18, 2009, Benjamin Kelsen, then counsel for the defendant, forwarded to Agent Gundersen two emails he had

received from the defendant: (1) one provided the name "Shiva Sharma" and a phone number; below it, the defendant had written to Mr. Kelsen, "I spoke with him, he said you can call him;" (2) the other email said "the last 4 of his social is 8622" and had Shiva Sharma's New York driver's license attached. The photograph in Sharma's license is of the same person whose photograph was attached to the defendant's passport application.

According to Mr. Kelsen, the defendant specifically instructed him to send the above emails to Agent Gundersen, as part of his ongoing effort to cooperate with the government. Mr. Kelsen recalls that, before proceeding, he discussed with the defendant reasons for and against making the transmission, and the defendant agreed that Mr. Kelsen should send the emails. Mr. Kelsen and Agent Gundersen then stayed in contact by telephone and email, whereby Mr. Kelsen conveyed the defendant's interest in meeting with the government. Agent Gundersen finally met the defendant and Mr. Kelsen on February 25, 2010, and advised them that the defendant faced several federal charges. The defendant was subsequently arrested, and retained new counsel. He was indicted on April 16, 2010.

Subsequent investigation revealed that the defendant had lied all along. He and Shiva Sharma were good friends in frequent contact. The defendant knew all along that the photograph in his passport application belonged to Sharma and not to the fictitious "Kevin Rampersaud." Sharma had previously been deported from the United States upon the commission of a felony and was thus ineligible for a United States passport. The defendant and Sharma conspired both to obtain a passport for Sharma in the defendant's name and, later, to lie to the government about what had happened and about Sharma's true identity.

On March 23, 2011, the defendant filed a motion to dismiss the indictment and suppress evidence, based on his contention that Mr. Kelsen sent the two emails on August 18, 2009 to a government agent without the defendant's authorization. He attached a sworn affidavit ("Aff."), also dated March 23, 2011, explicitly stating: "At no time did I ever authorize Mr. Kelsen to reveal any of my communications to a third party." Aff. ¶ 6. The defendant subsequently withdrew his motion and affidavit, and pled guilty to Count One of the indictment against him. He now repeats the same contention set forth in his motion and affidavit in his letter regarding sentencing. Ltr. ¶ 1.

II.     <u>A Two-Level Enhancement for Obstruction of Justice is Warranted</u>

The Probation Department correctly recommends a 2-level adjustment for obstruction of justice per U.S.S.G. § 3C1.1. Section 3C1.1 provides for the inclusion of this enhancement if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1. Application note 4 to that Guidelines section gives as an example, among others, of covered conduct "providing materially false information to a judge or magistrate judge."[1] That is exactly what the defendant has done: both during the prosecution of this case, by way of his March 2011 affidavit and motion, and then again at sentencing, by way of his letter, he has provided materially false statements to the Court. Just as the defendant lied to the government when he made a false statement in his passport application, and lied repeatedly throughout the investigation of this case, he lied in his March 2011 affidavit and motion and repeats those lies here.

His claim has been and remains thoroughly unsubstantiated. At best, the defendant offers that "telephone records between Mr. Kelsen and Mr. Sewnarine together with the communications between Mr. Sewnarine and his co-defendant" confirm his version of events, Ltr. ¶ 1.a, but does not describe let alone offer to introduce these records and communications. While his March 2011 motion was pending, the defendant likewise represented that such evidence in his favor existed, without

---

[1] Application note 4 also gives as an example of covered conduct "providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense." The Court could find that an adjustment for obstruction of justice is warranted for this reason as well. As recounted above, the defendant willfully attempted to thwart the investigation from the start, first by false statements in his letter to the Department of State and then in false statements to the case agent. For approximately two months, he misdirected the official investigation by supplying the case agent with false statements and about "Kevin Rampersaud," requiring the agent to investigate based on false information. <u>See, e.g.</u> <u>United States v. Thompson</u>, 164 F.3d 620, at *1 (2d Cir. 1998) (no abuse of discretion in finding obstruction of justice enhancement when defendant's false statements in interviews with law enforcement required the government to send subpoenas and administer a lie detector test to the defendant).

4

offering any of it for the court's consideration. Meanwhile, the defendant's claim is explicitly contradicted by Mr. Kelsen, by the contact between Mr. Kelsen and Agent Gundersen after Mr. Kelsen sent the August 18, 2009 emails, during which Mr. Kelsen expressed the defendant's desire to meet with the government and be cooperative (and indeed such a meeting did subsequently occur), and by Agent Gundersen's account of the defendant's engagement with him through this investigation.

III.     Conclusion

For the foregoing reasons, the Court should take account of the defendant's obstruction of justice per U.S.S.G. § 3C1.1 and sentence the defendant within the applicable advisory guidelines range set forth in the PSR.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney
Eastern District of New York

By:      /s/
Tali Farhadian
Assistant U.S. Attorney
(718) 254-6290

cc:  Camille Russell, Esq. (via ECF)
     U.S. Probation Officer Angelica Deniz (via electronic mail)